Tillie NICHOLSON, Plaintiff-Appellee,

v.

Sam GANT, II, etc., et al., Defendants,

Jackson County Commission, Houston Kennamer, Eddie Smith, Stella Houser; Marvin (Gene) Wells in their representative capacities as Members of the Jackson County Commission, and Ben Matthews, individually, and as a Member of the Jackson County Commission, Defendants-Appellants.

No. 86–7031.

United States Court of Appeals, Eleventh Circuit.

May 7, 1987.

Julian D. Butler, Butler & Royer, Huntsville, Ala., for defendants-appellants.

Gary C. Huckaby, Bradley, Arant, Rose & White, Huntsville, Ala., for plaintiff-appellee.

Before FAY and JOHNSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

In this case we review the propriety of a directed verdict granted in favor of plaintiff-appellee, Tillie Nicholson, against the defendant-appellants, Jackson County Commission and Sam Gant, II, Chairman. The plaintiff alleged that the defendant-appellants deprived her of both due process under the fourteenth amendment and freedom of speech under the first amendment. Finding no error, we affirm.

## I. FACTUAL BACKGROUND

On January 12, 1976, the plaintiff-appellee Tillie Nicholson (hereinafter Nicholson), was employed by the defendant-appellant Jackson County Commission (hereinafter Commission) under the CETA program. At the time of Nicholson's initial employment, defendant Sam Gant, II (hereinafter Gant) was the Chairman of the Commission. In January, 1976, Gant sought re-election as the incumbent chairman, but was defeated by Lawrence Sebring. In January, 1977, Sebring took over the position of Chairman of the Commission. During the Sebring administration, Nicholson transferred from the CETA program to regular employment with the Commission as the county clerk. Nicholson was later promoted to the position of assistant clerk.

During the Sebring administration, the Commission changed the titles of its staff so that Nicholson's former position of assistant clerk became assistant administra-

tor. The Commission also adopted a handbook of employee personnel policies which included the distinction between probationary employees and regular or permanent employees. According to the handbook, an employee was considered "regular" or "permanent" after completing an initial six months of probationary employment. The handbook provided that, prior to dismissal, an employee who had achieved a regular or permanent status was entitled to receive notice setting forth the reasons for the dismissal and the right to a hearing before the Commission. The handbook also provided that "[a]n employee in probationary status may be terminated at any time without cause."

In 1980, Gant again opposed Sebring in the election for Chairman of the Commission. Prior to the election primaries, a political rally was held in Scottsboro, the largest city in the county. Incumbent Chairman Sebring directed Nicholson to read a prepared statement at the rally supporting Sebring's bid for re-election. Nicholson expressed her desire not to read the statement.[1] At this point, Chairman Sebring responded he would have to "look into" the jobs of both Nicholson and her son, who was employed by the Jackson County's Public Works Department. This fact was corroborated by Nicholson's supervisor, Jocelyn LaMunyon, who was the office administrator of the Commission at the time the rally was held. LaMunyon,

whose office adjoined Nicholson's, testified that she overheard Chairman Sebring insisting that Nicholson read the statement at the rally. LaMunyon also confirmed the threat Chairman Sebring made against Nicholson's son's job. Nicholson read the statement at the rally. The statement was favorable to Chairman Sebring and unfavorable to Gant, who was present at the time.

Gant defeated the incumbent Sebring in the 1980 election. On January 16, 1981, immediately prior to his taking office as Chairman, Gant met with administrator LaMunyon to discuss each of the employees in the Commission office. LaMunyon provided Gant with job descriptions and personnel evaluations of all the Commission's office employees. These records presented to Gant included letters praising Nicholson's performance as a county employee and a Jackson County Commission Employee Guidance Sheet which reported that Nicholson had received the highest possible rating in every job performance category.

On January 20, 1981, the first day of Gant's new term as Chairman, Gant called Nicholson into his office and verbally terminated her. Nicholson requested that the termination be given to her in writing. Subsequently that morning Gant personally delivered a letter of termination to Nicholson.[2] Upon receiving the letter, Ni-

1. The Jackson County employee personnel policies contained the following provisions concerning political activity:

Employees of Jackson County shall not be appointed or retained on basis of their political activity. Jackson County employees shall not be coerced to take part in political campaigns, to solicit votes, to levy, contribute or solicit funds or support for the purpose of supporting or opposing the appointment or election of candidates for any Jackson County Office.

No employee shall actively advocate or oppose the candidacy of any individual for nomination or election to any Jackson County Offices, but an employee may participate in political affairs at other levels of government, provided such participation does not adversely affect his performance as a public employee. Employees are expected to exercise their right to vote in county elections, but shall not engage in, or participate in any other way in the county elections.

2. The January 20, 1981 letter of termination stated:

By virtue of the recent change in county administration, past perogatives accorded to the Chairman in the selection of office personnel, and existing local legislation according these perogatives to the Chairman, I have made the decision to terminate the position of Asst. County Administrator and your employment and reassign these duties to regular clerks. It would be impossible to assign these duties to you, as you have blatantly violated the Personnel Policies adopted by the County. This policy is very clear in this regard. Quote "NO EMPLOYEE SHALL ACTIVELY ADVOCATE OR OPPOSE THE CANDIDACY OF ANY INDIVIDUAL FOR NOMINATION OR ELECTION TO ANY JACKSON COUNTY OFFICES"—Page 14, last paragraph; Quote "SHALL NOT ENGAGE IN, OR PARTICIPATE IN ANY OTHER WAY IN THE COUNTY ELECTION,"

cholson orally requested a hearing before the Commission regarding the propriety of her discharge. Prior to discharging Nicholson, Gant was aware that Nicholson was a "permanent employee" under the personnel policies and as such would be entitled to notice of the reasons for her discharge as well as a hearing. Indeed, on that morning, Liz Johnson, personnel director, informed Gant that the Commission's personnel policies prohibited Gant from summarily discharging Nicholson.

The Commission met at 10:00 a.m. on January 20, 1981, and unanimously voted to reinstate Nicholson until the legality of her discharge was resolved. The Commission also requested an opinion of the Attorney General of the State of Alabama regarding the authority of the Chairman of the Commission to discharge clerical employees.[3] Further, the Commission adopted a new set of employee rules and regulations to replace the policies and procedures formerly used during the Sebring administration. Upon reinstatement, Nicholson continued to work as assistant administrator from January 20, 1981, until May 5, 1981. On May 4, 1981, the Commission convened and voted that it would not

> You will be paid any earned vacation, regular pay, and compensatory time that you are entitled to through today, January 20, 1981 at which time you are terminated.
> Sincerely,
> Sam Gant
> Chairman

The record reflects that Gant also discharged two other employees at the same time. This opinion concerns the propriety of the actions on behalf of Sam Gant and the Jackson County Commission toward Tillie Nicholson and does not concern the action of Gant or the Commission with respect to the two other discharged employees.

3. On April 24, 1981, the Attorney General issued an opinion pursuant to the Commission's request which stated in pertinent part:

> the Chairman of the Commission has the sole authority to hire the clerical assistance for that office. Furthermore, considering the determinations of the courts and because there is no statutory provision or county regulation relating to the dismissal of these employees, the Attorney General is of the opinion that the Chairman of the County Commission, as the individual who employs the clerical help, is also vested with the authority to dismiss these employees.

be responsible for the discharge of Nicholson, since it opposed Chairman Gant's decision. Nevertheless, on May 5, 1981, Gant delivered a letter to Nicholson which notified Nicholson that she was discharged, effective May 8, 1981, citing as authority the Attorney General's opinion. On the same day Nicholson made a written request for a hearing before the Commission's Personnel Review Board[4] regarding her termination. As of May 5, 1981, however, the Commission had not yet appointed the new Personnel Review Board. Thus, Nicholson was given the option of waiting for the Commission to appoint a Personnel Review Board or having her hearing conducted before the present Commission. Faced with this choice, Nicholson elected to have the hearing conducted before the present Commission.

On May 18, 1981, Nicholson, along with a previously discharged employee, Betty Sisco, and their attorney, Gerald Paulk, appeared before the Jackson County Commission. What transpired at this meeting was recorded in the Jackson County Commission's Executive Board Meeting Minutes. The minutes are set forth in pertinent part as follows:

> However, the Jackson County Commission has adopted a set of personnel policies and procedures. [The personnel policies referred to in the Attorney General's opinion were the personnel policies in effect prior to January 20, 1981, when Gant took office]. According to these policies, found on page 13 in the handbook of Personnel Policies and Procedures of the Jackson County Commission, a permanent employee who is dismissed has the right to appeal that dismissal in a hearing before the entire County Commission. Therefore, although the Chairman of the Commission has the authority to dismiss the employees in question, they are entitled to a hearing before the County Commission if they so desire.

4. The Personnel Review Board was established by the Commission on January 20, 1981, when the Commission adopted the new employee rules and regulations. The Board was to be comprised of a panel appointed by the Commission which would review the propriety of the discharge of a county employee. The record reveals that the Commission never appointed the Personnel Review Board at any time during Chairman Gant's administration.

Mr. Gerald Paulk talked to the Board. He stated that he was acting on the behalf of Tillie Nicholson and Betty Sisco by virtue of the dismissal of these employees by the Chairman; both ladies were discharged by letter from the Chairman, Mr. Sam Gant, II. Mrs. Nicholson's dismissal stated that her discharge was Political and that there was no problem with the performance of these workers, but that the problem was who had the authority to dismiss and by acting upon the Personnel Policy that was in [existence] at the time of the dismissal, he said that as he understood, Mr. Gant, was going by the local bill that gives the Chairman authority to appoint Clerical help as the Board shall [prescribe].[5] In his opinion, he stated that the Act gives the Chairman authority to hire certain employees, but it does not say that he has authority to fire. To entrust the power to a person for one thing does not necessarily give him authority to fire an employee for no reason. The Attorney General's opinion is not law and not binding, but would give you something to say that you did act in good faith. The Board has authority to [reinstate] these employees, and I am asking the Board to [reinstate] these people, that neither of these people want to have to go further and that he felt that they had a good case. If the Board did not have that authority, then the Attorney General's opinion would not have referred to the section on going before the Board, and that the Board had a right to do so, and if both the Chairman and the Board members could not agree that they could take the matter to the Courts.

MOTION TO [REINSTATE] TILLIE NICHOLSON AND BETTY SISCO

Motion was made by [Commissioner] Walker to [reinstate] Tillie Nicholson and Betty Sisco to the Commission Office. Motion was seconded by [Commissioner] Allen.

[Commissioner] Jeffery stated that he wanted to have a meeting with the Board and to get back with the Attorney on an answer within 10 days. [Commissioner] Matthews stated that he wanted to check to see if it was the legal way to go about this situation.

Mr. Gant said he'd like to make a statement. 'I have [one] statement to make and that is, I just did not want to [reappoint] these employees to their positions; also that I don't feel like you, the board, can pass a resolution at an executive meeting. It seems like as this is a court, I would like to have my Attorney present, and as Chairman, I therefore order for this meeting to be adjourned.'

The record reflects that at this time Nicholson, Betty Sisco and Gerald Paulk left the meeting room.

Paulk testified in the district court that immediately prior to Gant's statement, he was going to allow Nicholson to speak on her own behalf regarding her termination. He also testified that because Gant adjourned the meeting, Nicholson was denied the opportunity to state her case. Paulk further testified that no evidence or testimony was introduced during the meeting. It is undisputed that at the meeting no further deliberation or vote was taken regarding Nicholson's termination.

Nicholson subsequently received letters from all of the commissioners except Chairman Gant. Commissioners Walker and Allen informed Nicholson that in accordance with the policies and procedures set out by the Commission, they did have the power to reinstate an employee who was terminated without just cause. They further informed her that they chose to reinstate her to her previous position. Commissioners Matthews and Jeffery informed Nicholson that they did not feel they had authority to reinstate a terminated employee. Gant testified that he did not send a letter to Nicholson because he had made his position clear as to her future employment.

---

**5.** It is not clear from the record which local bill or act attorney Paulk was referring to when he made this statement at the meeting. There are several local acts authorizing the Chairman to employ county employees. However, none of the local acts or laws of Alabama pertain to the Chairman's authority over the discharge of county employees.

On April 2, 1982, Nicholson filed a complaint against Sam Gant, II, Ben Matthews and William Jeffery individually and as members of the Jackson County Commission; Carl Allen and Robert Walker as members of the Jackson County Commission; and the Jackson County Commission as a separate entity. The action was brought under 42 U.S.C. § 1983 (1982) alleging that the defendants, acting under color of state law, deprived Nicholson of due process regarding: (1) her property interest in her employment, (2) her right to be free from taint in her reputation, and (3) her first amendment right of freedom of speech. Nicholson later amended her complaint alleging that the provisions of the Commission's personnel policies governing political activity were violative of Nicholson's right of free speech as guaranteed by the first amendment. On September 28, 1983, the Commission filed an answer to Nicholson's complaint stating that it was without knowledge or information sufficient to form a belief as to the truth of the allegation that Sebring directed Nicholson to read a statement on his behalf at a political rally. On November 4, 1983, the Commission amended its answer alleging that Nicholson did not have a property interest in continued employment with the Commission and that the individually named defendants in their individual capacities, were entitled to absolute, qualified and good faith immunity. On June 2, 1981, Nicholson filed a claim with the Equal Employment Opportunity Commission alleging that she had been discriminated against on the basis of her sex and age.

The election held on May 16, 1985, resulted in a change in the make-up of the Commission. Nicholson was permitted to substitute Houston Kennamer, Eddie Smith, Stella Houser and Marvin Wells as successors in their representative capacity to the previous chairman Gant, and commissioners Allen and Walker. On June 5, 1985, the case was tried before the District Court for the Northern District of Alabama. The district court granted Nicholson's motion

for a directed verdict with respect to her alleged due process deprivations under the first and fourteenth amendments against the Commission and each Commissioner in his or her official capacity. The district court granted Nicholson's directed verdict individually with respect to Chairman Gant and Commissioners Jeffery and Matthews. The district court granted a motion for a directed verdict with respect to Nicholson's alleged liberty interest deprivation in favor of the Commission. The court submitted to the jury only the amount of compensatory damages, if any, to be awarded against the Commission, and the amount of punitive damages, if any, to be awarded with respect to Gant.[6]

On June 7, 1985, the jury returned its verdict in favor of Nicholson and against the Commission for compensatory damages in the amount of $100,000.00. The jury also awarded Nicholson $35,000.00 punitive damages against Gant individually. On December 16, 1985, the court ordered that Nicholson be reinstated as Deputy Chief Clerk of the Commission at her former rate of pay. The court also ordered that Nicholson would be entitled to retirement benefits under the State of Alabama's Retirement System which would have accrued to her had she not been terminated. On January 14, 1985, the Commission filed a notice of appeal.

## II. ISSUES

■ The Commission alleges two errors committed by the district court. First, the Commission alleges that the district court erred in granting Mrs. Nicholson's motion for a directed verdict both with respect to the alleged due process deprivations under the fourteenth amendment and her alleged freedom of speech violation under the first amendment. The Commission also alleges that the district court erred by not allowing the introduction of Mrs. Nicholson's complaint with the EEOC into evidence.

---

**6.** Nicholson waived any claim for punitive damages as against commissioners Jeffery and Mat-  thews prior to the jury's deliberation.

## A. *Due Process Deprivation*

Nicholson's claim that the Commission denied her due process depends on whether she had a property right in continued employment as a Jackson County employee. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972); *Thompson v. Bass*, 616 F.2d 1259, 1264 (5th Cir.), *cert. denied*, 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980).[7] In *Roth*, the Supreme Court stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

*Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. The existence of a legitimate claim of entitlement to a property interest in continued employment is to be determined in accordance with state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *see e.g., Loudermill*, 470 U.S. at 538, 105 S.Ct. at 1491; *Thompson*, 616 F.2d at 1264–65. Although

Alabama law provides that the County Commission has the authority to appoint and employ county personnel, *see* Ala.Code § 11–8–14 (1977), it is silent with respect to the discharging of county employees. However, in the present case the Commission adopted a handbook of employee personnel policies which provided that a permanent employee such as Mrs. Nicholson could only be terminated for cause after a hearing. We hold that the Commission's handbook of employee policies and procedures and the conduct of the parties establishes the existence of "rules or mutually explicit understandings," *Winkler v. County of Dekalb*, 648 F.2d 411, 414 (5th Cir. 1981) (quoting *Perry v. Sinderman*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972)) supporting Nicholson's claim to a property interest. *See Glenn v. Newman*, 614 F.2d 467, 471–72 (5th Cir. 1980) (a permanent employee has a constitutionally protected property interest in his or her job where a city defines rules governing the employee's dismissal and subsequent review procedure).

The district court found that based on the Commission's employee handbook, Mrs. Nicholson was a permanent employee and had a reasonable expectation of continued employment entitling her to procedural due process prior to the termination of her employment.[8] We think the district court was correct in this conclusion.

---

**7.** The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), adopted as binding precedent decisions of the former Fifth Circuit prior to October 1, 1981.

**8.** We find no Alabama cases specifically holding that a county employee has a constitutionally protected property interest where a county adopts an employee manual providing that a permanent employee can be discharged only for cause after a hearing. However, in *Thompson*, this court in applying Alabama law held,

> [a] state employee that may be discharged at will under state law has no property interest in his or her job, but a state employee whose employment may be terminated only for cause has a property interest in the state employment and is entitled to due process protections.

*Id.* at 1265; *see Thurston*, 531 F.2d at 1264. Further, in *Long v. Water Works and Sewer Bd.*, 487 So.2d 931, 934 (Ala.Civ.App.1986), a recent

analogous case, the Alabama Court of Civil Appeals declined to hold that an employee did not have a protected property interest where the employee asserted that "pursuant to an employee handbook (not in the record) he enjoyed permanent status as a municipal employee and had a property right to continued employment." Indeed, in its analysis of the alleged property right deprivation, the *Long* court cited to *Thurston* wherein the court held that under Florida Law a legitimate property interest in continued employment was created where a municipalities' rules for dismissal provided that non-probationary employees could be discharged only for cause. *Id.* 531 F.2d at 1272. *See also Kelly*, 764 F.2d at 1413–14.

We recognize that generally cases involving the alleged wrongful discharges under the due process clause are analyzed in terms of pretermination hearing requirements and post-termination hearing requirements. *See Loudermill*, 470 U.S. at 542–48, 97 S.Ct. at 1493–96; *Hatcher v. Bd. of Educ.*, 809 F.2d 1546, 1553 (11th Cir.

Having concluded Mrs. Nicholson was entitled to due process, "the question remains what process is due." *Loudermill*, 470 U.S. at 541, 105 S.Ct. at 1493 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)); *Marshall v. City of Cape Coral Fla.*, 797 F.2d 1555, 1559 (11th Cir.1986); *see Hatcher v. Bd. of Educ.*, 809 F.2d 1546, 1552, 1567, 1574 (11th Cir.1987).

> The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.... The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.

*Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495 (citations omitted); *Kelly v. Smith*, 764 F.2d 1412, 1414 (11th Cir.1985). In *Thurston v. Dekle*, 531 F.2d 1264, 1273 (5th Cir.1976), *rev'd on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978), this court outlined a procedure to satisfy minimum due process requirements. This includes written notice of the reasons for termination and an effective opportunity to rebut those reasons prior to termination. *Thurston*, 531 F.2d at 1273. "Effective rebuttal means giving the employee the right to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decision." *Glenn*, 614 F.2d at 472. The Supreme Court has stated that providing "some opportunity for the employee to present his side of the case is recurringly of obvious value" in a pretermination hearing for a public employee. *Loudermill*, 470 U.S. at 543, 105 S.Ct. at 1494. "It is the opportunity to be heard which is protected by the fourteenth amendment." *Washington v. Kirksey*, 811 F.2d 561, 564 (11th Cir.1987). With this in mind, it is clear that the meeting between Nicholson and the Commission on May 18, 1981, did not satisfy the requirements of due process. "At no time did [Nicholson] have the opportunity to present to the [Commission her] version of what happened." *Id.* "The fundamental requisite of due process of law is the opportunity to be heard." *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914)). Under these circumstances, we feel "[d]ue process requires a more formalistic confrontation of facts and positions." *Ferguson v. Thomas*, 430 F.2d 852, 857 (5th Cir.1970).

The Commission argues however, that Mrs. Nicholson was not entitled to a directed verdict because there was substantial evidence opposed to the motion in the form of testimony at trial and depositions previously taken.[9] We disagree. In *Michi-*

1987); *Blanton v. Griel Memorial Psychiatric Hosp.*, 758 F.2d 1540, 1542–44 (11th Cir.1985). However, since we hold that Nicholson was not given any hearing, we think it unnecessary to review this case in terms of the due process requirements for pretermination and post-termination hearings.

9. Specifically, the Commission argues that if Nicholson's defense was not presented, it was due to Nicholson's attorney's lack of familiarity with the case rather than Gant's act of adjourning the meeting. Nicholson's attorney, Gerald Paulk, testified at trial, "... I wasn't exactly well-versed on all of the merits of her work record and that sort of thing. So, I really wasn't in a very good position to state her case." The Commission also argues that discrepancies existed between the depositions and trial testimony of the chief clerk, LaMunyon, and Nicholson. Nicholson testified at trial that she could not remember saying anything at the hearing. Counsel for the Commission then attempted to impeach Nicholson with her former deposition in which she stated that she did not believe she had made a statement at the hearing; she believed she had left it up to the attorney. LaMunyon testified at trial that she did not remember Nicholson saying anything at the meeting. However, on deposition LaMunyon testified, when asked whether Nicholson said anything at the meeting, that Nicholson said "... something about she couldn't be dismissed for political reasons, or something like that." We do not think that Nicholson's attorney's lack of familiarity with Nicholson's work record or the testimony of Nicholson and LaMunyon both at trial and on deposition rises to the level of substantial evidence so that fair-minded men exercising impartial judgment would conclude that Nicholson was afforded an opportunity at the hearing to present her side of the case.

*gan Abrasive Co., Inc. v. Poole,* 805 F.2d 1001 (11th Cir.1986), this court recently reiterated the proper standard of review with respect to motions for a directed verdict:

> [o]n motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury.... There must be a conflict in substantial evidence to create a jury question.

*Michigan Abrasive,* 805 F.2d at 1004 (quoting *Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969)). After carefully reviewing the record, we find no merit in the Commission's assertion that there was substantial evidence opposed to the motion and accordingly affirm the district court with respect to the due process violation.

### B. *First Amendment*

▆ The Commission next argues the district court erred in granting a directed verdict with respect to Nicholson's alleged freedom of speech violation under the first amendment. We analyze this first amendment claim under the test set forth by the Supreme Court in *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *see Berry v. Bailey,* 726 F.2d 670, 674 (11th Cir.1984), *cert. denied,* 471 U.S. 1101, 105 S.Ct. 2326, 85 L.Ed.2d 844 (1985).

Under that test Nicholson first must show that the speech for which she alleged she was fired was constitutionally protected and that this speech was a substantial or motivating factor in the decision to discharge her. Once this is shown the burden shifts to the Commission to show by a preponderance of the evidence that Nicholson would have been dismissed in the absence of the protected speech. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *Berry,* 726 F.2d at 674 (citation omitted). The record reveals that Nicholson clearly expressed her desire not to read the prepared statement at the political rally. This court has recently held that "[a] public employee who positively asserts the right not to speak when ordered to support his employer is within the protection of the first amendment." *Sykes v. McDowell,* 786 F.2d 1098, 1104 (11th Cir.1986); See *Berry,* 726 F.2d at 673. For the purposes of first amendment analysis we see no meaningful distinction between a public employee who asserts the right not to speak in support of his employer and a public employee who asserts the right not to speak, but ultimately makes the speech. However, the protections afforded the employee are not absolute, a balance must be struck between the employee's first amendment interest and the government's interest "in promoting the efficiency of the public services it performs through its employees." *Connick v. Myers,* 461 U.S. 138, 140, 103 S.Ct. 1684, 1686, 75 L.Ed.2d 708 (1983) (quoting *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)); *Mt. Healthy,* 429 U.S. at 284, 97 S.Ct. at 574; *Berry,* 726 F.2d at 674–75; *Tanner v. McCall,* 625 F.2d 1183, 1189 (5th Cir.1980), *cert. denied,* 451 U.S. 907, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). There is no suggestion in the record that the discharge of Nicholson promoted the efficiency of the public services performed by the Commission.[10] We therefore conclude that Nicholson's speech was constitutionally protected.

---

**10.** Gant testified that all services previously performed by Nicholson would continue under his administration after her discharge.

In determining whether Nicholson's speech was a substantial or motivating factor in her discharge, the record is very clear. Gant testified that he knew of no situation indicating that Nicholson was not loyal as an employee of the Commission. Nevertheless, Gant testified that based on the speech Nicholson delivered at the political rally, he did not feel that Nicholson would be loyal to him. Gant testified that it was his goal, from the time he was elected, to terminate Nicholson. Gant's testimony adduced at trial led the district court to state at the reinstatement hearing, "I haven't seen such a blatant wrong since I've been on the bench as was committed by Mr. Gant. Purely for political reasons. Old line politics." Since the record is devoid of any evidence indicating that Nicholson would have been discharged in the absence of the speech, we affirm the district court with respect to the first amendment claim.

The Commission next alleges the district court erred by not allowing the Commission to cross-examine Nicholson regarding the complaint filed by Nicholson with the EEOC alleging that she was discharged on the basis of her sex and age. The Commission contends that the complaint would be admissible as a prior inconsistent statement concerning the reasons for Nicholson's discharge. The admissibility of evidence is committed to the sound discretion of the trial court. Rulings concerning the admissibility of evidence should be reversed only where it can be shown that the trial court abused its broad discretion and where the ruling adversely affected appellant's substantial rights. *Woods v. Burlington N. R.R. Co.*, 768 F.2d 1287, 1291 (11th Cir.1985), *cert. granted, sub nom. Burlington N. R.R. Co. v. Woods,* — U.S. —, 106 S.Ct. 1456, 89 L.Ed.2d 714 (1986); *Murphy v. City of Flagler Beach,* 761 F.2d 622, 626 (11th Cir.1985). No such showing has been demonstrated in this case. Affirmed.