[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-13503

_____

DANIEL JON PETERKA,

                                                    Plaintiff-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:21-cv-00367-WS-MAF

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and LUCK, Circuit Judges.

PER CURIAM:

Daniel Peterka is an inmate serving a death sentence in the custody of the Florida Department of Corrections. As an inmate, Peterka can send and receive emails. Six of his incoming emails were censored by the Department's prison officials. Peterka sued the Department, claiming that it violated his procedural due process rights by censoring the six emails without providing adequate notice or an opportunity to challenge the censorship decisions. After discovery, Peterka and the Department each moved for summary judgment, and later, Peterka also moved to reopen discovery. The district court denied Peterka's motions and granted summary judgment for the Department. Peterka now appeals those decisions. After careful review, we conclude that the district court did not abuse its discretion in denying Peterka's motion to reopen discovery and did not err in granting summary judgment for the Department on Peterka's procedural due process claim. So we affirm.

## FACTUAL BACKGROUND

In 1989, a Nebraska state court sentenced Peterka to two years' imprisonment for theft. *Peterka v. State*, 640 So. 2d 59, 62–63 (Fla. 1994). But Peterka had other plans and absconded to the Florida panhandle instead. *Id.* Once in Florida, he armed himself with a .357 magnum, stole his roommate's identity, fraudulently obtained a driver's license under his roommate's name, and cashed his roommate's money order using the phony driver's license and a

fake signature. *Id.* When the roommate found out, Peterka shot him in the head in their shared duplex. *Id.* at 64. To hide his crime, Peterka wrapped the body in a rug, drove to a remote location near Eglin Air Force Base, and buried his roommate's corpse in a shallow grave. *Id.* A jury convicted Peterka of first-degree murder and he was sentenced to death. *Id.* at 62.

Peterka has been awaiting the execution of his sentence at Union Correctional Institution. In his first days there, he was trained on how to file grievances and was given the inmate handbook, which explained the grievance process.

Death-row inmates at Union Correctional, like Peterka, had access to a tablet that sent and received emails. Prison officials monitored both incoming and outgoing emails. If a prison official found material in an email that violated the Department's rules or state or federal law, the official would censor the email and notify the inmate that the email had been censored.

If the inmate disagreed with the censorship decision, the inmate could follow the three-step grievance process, which can be used to challenge the "application of rules and procedures of the Department that affect[s] the[ inmate] personally" or any "[i]ncident[] occurring within the institution that affect[s] the[ inmate] personally." FLA. ADMIN. CODE R. 33-103.001(4). Under the first step, the inmate files an informal grievance challenging the censorship decision, and the informal grievance is reviewed by a prison official who can either grant relief by delivering the uncensored email or explain why the grievance was denied. *See id.* R. 33-

103.005(4)(b) (requiring the response to an informal grievance to provide "reasons for the . . . denial"). Under the second step, the inmate files a formal grievance challenging the censorship decision and a different prison official than the one who reviewed the informal grievance must either deliver the uncensored email or explain why the formal grievance was denied. *See id.* R. 33-103.006(6), (9). And finally, under the third step, the inmate can challenge the grievance denials to the Bureau of Policy Management and Inmate Appeals, which either reverses the grievance denials or provides reasons why the grievances were properly denied. *See id.* R. 33-103.007(6)(e)–(f).

Between 2018 and 2023, six emails sent to Peterka were censored. Each time Peterka received notice that the email had been censored. Twice, Peterka used the grievance process to challenge the Department's censorship decisions. The first time, his relative sent him an email on May 18, 2021, and that same day, Peterka received a notice that the email was censored "due to content." Challenging the censorship decision, Peterka filed an informal grievance, which was denied, and then a formal grievance, which was also denied. Seeking to overturn the denials and receive the uncensored email from his relative, Peterka appealed. Union Correctional's assistant warden and another Department official denied the appeal, explaining that the email was properly censored because it contained information "that violate[d] state law, federal law, or [a] Department rule."

24-13503                Opinion of the Court                    5

For the second grievance, Peterka challenged the censorship process as a whole. In June and July 2021, he submitted formal and informal grievances asserting that the censorship process violated his procedural due process rights because the Department's process allowed email censorship notices that did not give a detailed explanation for the censorship decision. After both grievances were denied, Peterka appealed and sought relief requiring the Department to change the process. Again, the assistant warden and another Department official denied his appeal, stating that they lacked the power to change the process through the grievance appeal process.

## PROCEDURAL HISTORY

Peterka sued the Department under 42 U.S.C. section 1983, alleging that his Fourteenth Amendment procedural due process rights were violated because some of his incoming emails were censored without adequate notice and an opportunity to challenge the censorship decisions. The district court entered an initial scheduling order giving the parties from September 2023 to January 2024 to complete discovery.

Peterka was an active participant in the discovery process. He served the Department with interrogatories and requested admissions and documents. In the interrogatories, Peterka requested information about the procedures available to inmates to appeal email censorship decisions. The Department responded that inmates could file a grievance to appeal an email censorship decision

under the three-step grievance process discussed in the inmate training and handbook.

After the discovery deadline came and went, Peterka and the Department moved for summary judgment. Peterka argued that his procedural due process rights were violated because the Department censored some of his incoming emails without providing an explanation for why the emails were censored and there was no actual appeal process. The Department's rules and the Inmate Grievance Procedure, Peterka asserted, did not specifically mention using the grievance process to appeal email censorship decisions. The Department responded that Peterka's procedural due process rights were not violated because the Department served him with notices that his six incoming emails were censored and he had an adequate opportunity to appeal those censorship decisions through the three-step grievance process.

While the summary judgment motions were pending—and more than four months after discovery ended—Peterka moved to reopen discovery. He sought "a second round of discovery" to find out how inmates can appeal email censorship decisions "when there [wa]s nothing" in the administrative code that discusses using the grievance process for that purpose. The district court denied the motion without prejudice, explaining that Peterka could refile his request if his claim survived summary judgment.

But the district court granted the Department's motion for summary judgment. Procedural due process, the district court explained, required only notice to Peterka that his six emails had been

censored and an opportunity for him to challenge the censorship decisions to a different prison official.  The undisputed summary judgment evidence, the district court concluded, showed that Peterka had both.  He was notified that the six emails were withheld because of the Department's censorship decisions.  He had an opportunity through the three-step grievance process to challenge the censorship decisions to different prison officials.  And, in fact, Peterka used the three-step grievance process to challenge one of the Department's censorship decisions.

Peterka appeals the district court's order denying his motion to reopen discovery and the summary judgment for the Department.

## STANDARD OF REVIEW

We review the district court's order denying a motion to reopen discovery for an abuse of discretion.  *See Artistic Ent., Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003).  And we review a district court's summary judgment de novo, "draw[ing] all inferences and review[ing] all evidence in the light most favorable to the non-moving party." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).  To grant summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## DISCUSSION

We divide our discussion in two parts.  First, we consider whether the district court abused its discretion in denying Peterka's

motion to reopen discovery.  Then, we address whether the district court erred in granting summary judgment for the Department.

### Motion to Reopen Discovery

Federal Rule of Civil Procedure 16 requires the district court to issue a scheduling order with a discovery deadline.  *See* FED. R. CIV. P. 16(b)(1), (b)(3)(A).  The "schedule may be modified only for good cause and with the judge's consent."  *Id.* R. 16(b)(4).  "The party seeking" modification "bears the burden of establishing that good cause exists."  *See Stansell v. Revolutionary Armed Forces of Colom.*, 120 F.4th 754, 766 (11th Cir. 2024).

That burden cannot be met by "assert[ing] that further discovery is needed, without more[.]"  6A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1522.2 (3d ed. May 2025 Update).  Instead, to show good cause, the party seeking amendment of the scheduling order must present non-conclusory facts showing that the unamended "schedule cannot 'be met despite the diligence of the party seeking the extension.'"  *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting FED. R. CIV. P. 16 advisory committee's note); *see also Stansell*, 120 F.4th at 766 (explaining that good cause "requires a particular and specific demonstration of fact" rather than "stereotyped and conclusory statements").

Here, Peterka failed to show good cause because he offered no explanation that the "schedule c[ould not] be met despite [his] diligence."  *See Sosa*, 133 F.3d at 1418 (citation and internal quotation marks omitted).  He asked for "a second round of discovery" to understand how inmates could appeal email censorship

decisions when the administrative code discussing the grievance process was silent about using that process to challenge email censorship decisions. But even before the initial discovery period, the Department's answer gave Peterka notice that the three-step grievance process could be used to challenge "censorship of e[c]ommunications." After the answer was filed, the district court gave Peterka more than three months to discover information about the Department's processes for challenging email censorship decisions. And during that time, Peterka served interrogatories, requests for admission, and requests for documents focused on that very topic. His motion to reopen discovery—filed four months after the discovery deadline and after the Department's motion for summary judgment—gave no reason why he could not have discovered the requested information during the initial discovery period. In other words, Peterka merely "assert[ed] that further discovery [wa]s needed, without" providing any basis for good cause. *See* WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1522.2. Without any indication that good cause existed, the district court did not abuse its discretion in denying Peterka's motion to reopen discovery. *See* FED. R. CIV. P. 16(b)(4).

### *Motion for Summary Judgment*

We now turn to the district court's summary judgment for the Department on Peterka's procedural due process claim. Once the Department moved for summary judgment on the claim, Peterka had to present summary judgment evidence that showed a: (1) "deprivation of a constitutionally-protected liberty or

property interest; (2) state action; and (3) constitutionally-inadequate process." *J.R. v. Hansen*, 736 F.3d 959, 965 (11th Cir. 2013) (citation and internal quotation marks omitted). The third element—"constitutionally-inadequate process"—is the only element at issue here.[1] *See id.*

At bottom, the procedural component of the Due Process Clause requires "notice and an opportunity to respond." *Nicholson v. Gant*, 816 F.2d 591, 598 (11th Cir. 1987) (citation and internal quotation marks omitted). In the context of a prison official's decision to censor an inmate's email, that means: (1) "the inmate must receive notice" that the email has been censored; (2) the inmate must "be given reasonable opportunity to protest that decision"; and (3) "complaints [must] be referred to a prison official" different from "the person who originally" censored the email. *See Benning*, 71 F.4th at 1329–30 (citation and internal quotation marks omitted).

Here, the summary judgment evidence is undisputed that Peterka received the process he was due. The Department provided "notice" to Peterka of the six times his incoming emails were censored. *See id.* (citation and internal quotation marks omitted). The three-step grievance process gave Peterka a "reasonable

---

[1] We've held that inmates "ha[ve] a protected liberty interest, grounded in the First Amendment, in the emails [they] generated and sought to send[.]" *Benning v. Comm'r, Ga. Dep't of Corr.*, 71 F.4th 1324, 1330 (11th Cir. 2023). We assume (without deciding) that inmates have the same interest in incoming emails.

opportunity to protest" the Department's censorship decisions. *See id.* (citation and internal quotation marks omitted). Under that process, Peterka had the opportunity to file informal and formal grievances challenging the censorship decisions and then appeal the denial of the grievances to prison officials different from "the person who originally" censored the email. *See id.* (citation and internal quotation marks omitted). And, in fact, Peterka did file informal and formal grievances and two separate appeals of decisions denying his grievances related to the Department's email censorship. For these reasons, the district court properly granted summary judgment for the Department on Peterka's procedural due process claim.

*Benning* does not undermine our conclusion. There, when an inmate's outgoing emails were censored, he sued the prison officials for violating his procedural due process rights. *Benning*, 71 F.4th at 1327–28. The district court granted summary judgment to the prison officials, *id.* at 1328, but we reversed in part, *id.* at 1333, 1340. In doing so, we first recognized that the inmate had a protected liberty interest in uncensored outgoing emails. *Id.* at 1331. Then, we explained that the inmate provided summary judgment evidence showing that he did not have a constitutionally adequate process to challenge the prison's censorship decisions because he did not receive notice that his emails were censored and the prison officials "did not provide him with an appeal to a different [prison] official." *Id.* at 1333. Here, in contrast, the summary judgment evidence was undisputed that Peterka received notice of the Department's censorship decisions and had an opportunity (that he

took) to appeal the decisions to different prison officials through the three-step grievance process.

Peterka raises three counterarguments in response. First, he contends that the three-step grievance process was not constitutionally adequate because the steps for challenging email censorship were different than the ones for challenging physical mail censorship. In support, he lifts this quote from *Benning*: "Thanks to computers and the [i]nternet, we can now correspond with others digitally through email, and for due process purposes it makes both doctrinal and practical sense to treat outgoing email the same as physical letters." *Id*. at 1331. From this snippet, Peterka argues that the procedural component of the Due Process Clause requires that notice and the opportunity to respond must be identical for email and physical mail.

But Peterka takes the quote out of context. That part of *Benning* discussed the first element of the inmate's procedural due process claim—the deprivation of a constitutionally protected liberty interest. *See id*. We held that the inmate had a protected liberty interest in uncensored outgoing emails, just as he had an interest in uncensored physical mail. *See id*. But, in *Benning*, we never held that under the third element—constitutionally-inadequate process—prison officials must have identical processes for challenging email and physical mail censorship decisions. *See id*. at 1332–33. Instead, when discussing the third element, we explained that inmates "must receive notice" that their email has been censored and they must "be given a reasonable opportunity to protest that

24-13503                Opinion of the Court                13

decision" to a different prison official.  *See id.* at 1329–30 (citation and internal quotation marks omitted).  Here, the summary judgment evidence shows that Peterka received both.  He had notice that his six emails were censored, and he was given an opportunity to challenge those decisions before different prison officials through the three-step grievance process.  *Cf. Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018) ("Due process is flexible, we have stressed repeatedly, and it calls for such procedural protections as the particular situation demands." (cleaned up)).

Second, Peterka asserts that he received inadequate notice because the notices he received did not give sufficient reasons for the Department's censorship decisions.  But the Supreme Court and this Court have said that procedural due process requires only that the "inmate be notified" that his mail was censored.  *See Procunier v. Martinez*, 416 U.S. 396, 418–19 (1974); *see also Benning*, 71 F.4th at 1332–33.  We have never held that due process requires the notice to give a detailed explanation of why the email was censored.  If the inmate believes that an email was censored in error, he can challenge the censorship decision under the three-step grievance process.  *See* Fla. Admin. Code R. 33-103.  And in that process, if the grievance is denied, a different prison official from the one who made the censorship decision must explain the reason for the decision.  *See* FLA. ADMIN. CODE R. 33-103.005, 33-103.006, & 33-103.007 (requiring an explanation for denying informal grievances, formal grievances, and grievance appeals).

Third, Peterka argues that the Department's censorship process was not constitutionally adequate because the inmate training materials did not discuss using the grievance process to appeal email censorship decisions. But the inmate training materials explained that the three-step grievance process could be used to challenge "application of rules and procedures of the Department that affect[s] the[ inmate] personally" and any "[i]ncident[] occurring within the institution that affect[s] the[ inmate] personally." *Id.* R. 33-103.001(4). Applying prison rules to censor six of his incoming emails affected Peterka personally. *See id.* He knew from the time he arrived at the prison that the three-step grievance process could be used to challenge the Department's decisions that affected him personally. Indeed, Peterka did just that when he filed two sets of grievances related to the Department's email censorship. That process was constitutionally adequate.

**AFFIRMED.**[2]

---

[2] We agree with the Department that oral argument is not needed to decide this appeal. *See* 11th Cir. R. 34-3(f).