862 F.2d 75
 50 Ed. Law Rep. 365, 3 Indiv.Empl.Rts.Cas. 1801
 Stephen A. ARVINGER, Plaintiff-Appellee,
v.
MAYOR AND CITY COUNCIL OF BALTIMORE; Baltimore City
Department of Education; Larry Burgan, Baltimore City
Department of Education and; Bernard Stokes, Baltimore City
Department of Education, Defendants-Appellants.
 No. 88-2002.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 6, 1988.
Decided Nov. 23, 1988.
Rehearing and Rehearing In Banc Denied Dec. 19, 1988.
 
 Phillip G. Dantes (Neal M. Janey, City Sol., Baltimore, Md., on brief), for defendants-appellants.
 Kathleen M. Cahill, Baltimore, Md., for plaintiff-appellee.
 Before MURNAGHAN and CHAPMAN, Circuit Judges, and WILLIAMS, District Judge for the Eastern District of Virginia, sitting by designation.
 RICHARD L. WILLIAMS, District Judge:
 This case involves the first amendment rights of public employees. The lower court held that the appellants violated the first amendment rights of the appellee when it fired him for a statement he made. Because we hold that the statement in question did not involve a matter of public concern, but was rather made with only private interests in mind, the lower court decision must be reversed.
 I.
 Stephen A. Arvinger was a school police officer employed by the Department of Education of the City of Baltimore. On the evening of July 14, 1983, he and fellow school police officer Diane Diggs drove in Mr. Arvinger's van to the home of a third person. Ms. Diggs went into the house while Mr. Arvinger remained outside in his van. While he was waiting, Baltimore City police officers approached the van and, because they spotted cigarette rolling papers on the dashboard, searched the van. The search turned up an envelope containing marijuana. At this point, the stories of appellants and appellee begin to differ. Mr. Arvinger claims that, in response to police questioning concerning the marijuana, he told them that it was not his, and that he did not know whether it belonged to Ms. Diggs. The appellants claim that Mr. Arvinger told the police that night that the marijuana belonged to Ms. Diggs. Mr. Arvinger was arrested; Ms. Diggs was not.
 Following the arrest, Mr. Arvinger was repeatedly questioned concerning the ownership of the marijuana, and there are several conflicting accounts of his answers. Mr. Arvinger maintains that he did not know whether the marijuana belonged to Ms. Diggs, and that he has so stated consistently. The appellants claim that Mr. Arvinger has twice stated that the marijuana in fact belonged to Ms. Diggs. Criminal charges against Mr. Arvinger were dropped in August. Ms. Diggs was fired in September because the department's investigation led them to believe that the marijuana was hers.
 In March of 1984, Ms. Diggs filed sex discrimination charges against the department based on the disparate treatment she and Arvinger received following the discovery of the marijuana. In connection with this suit, Mr. Arvinger was again questioned about the incident by an investigator of the Baltimore Community Relations Commission (CRC) in June, 1984, and he stated that he did not know whether the marijuana was hers. On December 4, 1984, Larry Burgan, Chief of School Security Force and Bernard Stokes, Assistant Chief, informed Mr. Arvinger that he was fired for lying to the CRC investigator.
 Mr. Arvinger responded by filing the present suit under 42 U.S.C. Sec. 1983, charging that the department fired him for speaking out on an issue of public concern--sex discrimination--and that this was a violation of his first amendment rights. He also sued under 42 U.S.C. Sec. 1985, alleging a conspiracy to violate these same rights. The court below ruled as a matter of law that Mr. Arvinger's statement was about a matter of public concern, and that the defendants had failed to prove that it was disruptive or in any other way impaired Arvinger's or the department's work. The case was tried to a jury on the Sec. 1983 and Sec. 1985 claims. The jury found liability under the former, but not the latter, and assessed damages accordingly. This appeal followed.
 II.
 A public employee, it has long been held, does not have a constitutional right to his job. This does not mean, however, that any condition, no matter how arbitrary or unconstitutional, may be placed on continued public employment. Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d231 (1960); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952). There is a tension inherent in the government's role as employer. In its capacity as government, its actions are constrained by the constitution in ways that the actions of private entities are not. In its proprietary capacity, however, it must be free to make efficient personnel decisions. See Rankin v. McPherson, 483 U.S. 378, ----, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315, 324 (1987), reh'g denied --- U.S. ----, 108 S.Ct. 31, 97 L.E.2d 819 (1987); Connick v. Myers, 461 U.S. 138, 143, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1982).
 The effort to resolve this tension in the free speech context began with Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1972). That case established a balancing test between "the interests of the [employee], as a citizen, in commenting upon matters of public concern," and "the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. at 568, 88 S.Ct. at 1735. A proper Pickering analysis asks first whether the speech in question involved a matter of public concern, and then whether that speech so disrupted the employer's functioning as to justify the imposition on the speaker's first amendment rights. If it is determined that the statement concerns private rather than public matters, it is not necessary to proceed to a consideration of the employer's interests. Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689-90, 75 L.Ed.2d 708 (1982). The public concern determination is a question of law to be decided by the court. Id. at 147 n. 7, 103 S.Ct. at 1690 n. 7. We therefore review de novo the district court's holding that Arvinger's statement involved a matter of public concern.
 Constitutional scholars have discussed many different purposes for the First Amendment. We do not undertake to decide among these today, but rather note that with respect to the Pickering doctrine, one purpose stands out. The Supreme Court, in the Connick case noted that the public concern prong of the Pickering test was rooted in the understanding that " 'speech concerning public affairs is more than self-expression; it is the essence of self-government.' " Connick, 461 U.S. at 145, 103 S.Ct. at 1689, quoting Garrison v. Louisiana, 379 U.S. 64, 74-75, 85 S.Ct. 209, 215-16, 13 L.Ed.2d 125 (1964). The Pickering doctrine is not aimed at protecting the jobs of public employees in the face of any statement they might make on any subject. Instead, because debate on topics of public concern is fundamental to the American system of government at all levels, Pickering is designed to ensure that a governmental entity does not use its personnel decisions to influence that debate. Statements that do not contribute to that debate are, consequently, afforded less protection against such governmental personnel decisions.
 First Amendment protection is invoked most often by a public employee when the employee attempts to contribute to the debate on his or her governmental employer by criticizing that employer. Such criticism is, in turn, both a matter of public concern and an attack on the employer. This is the paradigm situation for which the Pickering balance was designed, and it is one that the Supreme Court and this Court have faced repeatedly. Connick, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1982) (employee of district attorney's office circulates questionnaire concerning office practices, morale, etc.); Givhan v. Western Line Consolidated School District, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) (teacher comments to principal concerning discrimination in the school); Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (school teacher released internal memorandum to local radio station); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (teacher commented on conversion of junior college to four-year college); Jackson v. Bair, 851 F.2d 714 (4th Cir.1988), reh'g granted en banc, Aug. 23, 1988 (prison guard comments on policies of warden); Piver v. Pender Board of Education, 835 F.2d 1076 (4th Cir.1987) (teacher spoke out on a school board decision not to rehire a principal); and Whalen v. Roanoke County Board of Supervisors, 797 F.2d 170 (4th Cir.1986) (en banc) (county employee testifies as a private citizen concerning the location of a power line).
 The question the court most generally faces, then, is whether the comment in question more closely resembles public debate or private employment grievance. The Connick court specifically stated that the latter are not protected by the first amendment, noting that "government offices could not function if every employment decision became a constitutional matter." 461 U.S. at 143, 147, 103 S.Ct. at 1690. See also Lewis v. Blackburn, 759 F.2d 1171 (4th Cir.) (adopting dissenting opinion of Ervin, J., 734 F.2d 1000, 1008 (4th Cir.1984)), cert. denied 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985). Judge Ervin stated that the motivation for a state court employee's speech, for which she was fired, "was personal effrontery over being asked to do more work, not public-spirited concern over the administration of justice." 734 F.2d at 1010. A government employee's right to gripe about the conditions of his or her job is protected to the same degree as that of private employees, as only under such condition is efficient government service possible.
 The appellee in this case was fired for stating during a coworker's fair employment hearing that he did not know whether a quantity of marijuana found in his van belonged to the coworker. Charitably construed, this does not constitute a grievance against his employer. The fact that the statement is not an employment grievance does not resolve the case. A statement that does not address the operation of the government entity in question, or in any other way constitute a grievance on the part of the employee, must still involve a matter of public concern in order to be eligible for first amendment protection.
 This court's decisions on the issue of public concern reflect this approach. In Berger v. Battaglia, 779 F.2d 992 (4th Cir.1985), cert. denied 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720 (1986), a case involving "artistic expression wholly unrelated in content to the public employer or its operations," id. at 997, we stated, "[t]he focus is ... upon whether the 'public' or the 'community' is likely to be truly concerned with or interested in the particular expression...." Id. at 999. Because the expression in that case involved racism, it was held to be of public concern. Id. Joyner v. Lancaster, 815 F.2d 20 (4th Cir.), cert. denied --- U.S. ----, 108 S.Ct. 102, 98 L.Ed.2d 62 (1987) contrasted "public-spirited" speech with "speech in the interest of the speaker or of another whose cause the speaker advocates," in stating that the latter is entitled to a lesser degree of protection. Id. at 24; see also Lewis, 734 F.2d at 1010.
 In deciding that a statement falls within the realm of public concern, it is not sufficient to determine that it does not fall on the "private grievance" end of the spectrum. A statement that involves private interests of any kind, and that is otherwise devoid of public concern, is not entitled to protection under the Pickering test. The statement at issue in this case was made solely to further the interests of Mr. Arvinger and Ms. Diggs. It was not made to further the public debate on employment discrimination, drug policy, or any other topic. By firing Mr. Arvinger for this statement, the Baltimore school police department was not attempting to, and did not, chill any part of that public debate which is the "essence of self-government."
 The lower court in this case held that, "Speech given in the course of an official investigation of discrimination unquestionably qualifies as a 'matter of public concern.' " Memorandum Opinion at 2. The public concern determination should be based on the "content, form, and context" of the statement in question. Connick, 461 U.S. at 147, 103 S.Ct. at 1690. Although theConnick court did not elaborate on the relative weight to be accorded these three factors, this court has held that "content, subject-matter, is always the central aspect." Jackson v. Bair, 851 F.2d 714,720 (4th Cir.1988). The district court in this case has improperly elevated context over content. As we noted above, Mr. Arvinger was not commenting on the employment policies of the department. Furthermore, although we agree with the district court that "if co-workers were not free to exercise free speech in such a forum, those agencies of government charged with the responsibility of ridding society of discrimination would have to shut their doors forever," Memorandum Opinion at 2, we are of the opinion that it is not the First Amendment, but rather Sec. 704 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-3, that keeps those doors open.[1] It is, in this case, irrelevant for first amendment purposes that the statement was made in the course of an official hearing.
 For the foregoing reasons, the district court decision is reversed and remanded with instructions to enter judgment in favor of the appellants.
 REVERSED AND REMANDED.
 
 
 
 [1]
 Mr. Arvinger also sued for retaliatory discharge under Sec. 704. This claim is not presently before us