ON REHEARING

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CARL EDWARD KIRBY,
            *Plaintiff-Appellant,*

v.

CITY OF ELIZABETH CITY, North
Carolina, a municipal corporation;
TREVOR HAMPTON, in his official
capacity and individually; FRANK
KOCH, individually and in his
official capacity,
            *Defendants-Appellees.*

---

NATIONAL ASSOCIATION OF POLICE
ORGANIZATIONS; FRATERNAL ORDER OF
POLICE; PROFESSIONAL FIREFIGHTERS
& PARAMEDICS OF NORTH CAROLINA;
NORTH CAROLINA ASSOCIATION OF
EDUCATORS; NORTH CAROLINA
ACADEMY OF TRIAL LAWYERS,
            *Amici Supporting Appellant,*

NORTH CAROLINA ASSOCIATION OF
COUNTY COMMISSIONERS; NORTH
CAROLINA SCHOOL BOARDS
ASSOCIATION,
            *Amici Supporting Appellees.*

No. 03-2035

Appeal from the United States District Court
for the Eastern District of North Carolina, at Elizabeth City.
Terrence W. Boyle, Chief District Judge.
(CA-01-46-BO)

Argued: June 3, 2004

Decided: November 3, 2004

Before WILKINS, Chief Judge, WILLIAMS, Circuit Judge,
and David R. HANSEN, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

---

Affirmed by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge Williams and Senior Judge Hansen joined.

---

## COUNSEL

**ARGUED:** Joseph Michael McGuinness, Elizabethtown, North Carolina, for Appellant. Norwood Pitt Blanchard, III, CRANFILL, SUMNER & HARTZOG, L.L.P., Raleigh, North Carolina, for Appellees. **ON BRIEF:** Patricia L. Holland, Rachel K. Esposito, CRANFILL, SUMNER & HARTZOG, L.L.P., Raleigh, North Carolina, for Appellees. William J. Johnson, NATIONAL ASSOCIATION OF POLICE ORGANIZATIONS, INC., Washington, D.C., for NAPO; Richard Hattendorf, FRATERNAL ORDER OF POLICE, Charlotte, North Carolina, for FOP; M. Travis Payne, EDELSTEIN AND PAYNE, Raleigh, North Carolina, for Professional Fire Fighters and Paramedics of North Carolina and North Carolina Academy of Trial Lawyers; John W. Gresham, FERGUSON STEIN CHAMBERS, Charlotte, North Carolina, for North Carolina Association of Educators, Amici Supporting Appellant. James B. Blackburn, III, NORTH CAROLINA ASSOCIATION OF COUNTY COMMISSIONERS, Raleigh, North Carolina, for NCACC; Allison Brown Schafer, NORTH CAROLINA SCHOOL BOARDS ASSOCIATION, Raleigh, North Carolina, for NCSBA; M. Daniel McGinn, BROOKS, PIERCE, McLENDON, HUMPHREY & LEONARD, L.L.P., Greensboro, North Carolina, for Amici Supporting Appellees.

**OPINION**

WILKINS, Chief Judge:

Carl Edward Kirby appeals a district court order granting summary judgment against him in his action against the City of Elizabeth City, North Carolina ("City"); City Police Chief Trevor Hampton; and City Police Lieutenant Frank Koch (collectively, "Appellees") in which Kirby asserts that he was retaliated against based on the content of his truthful testimony at a public hearing and based on his subsequent challenges to that alleged retaliation. We affirm the district court order, although partly on grounds different from those relied on by the district court.

I.

Kirby is employed by the City as a police officer. On July 19, 2001, Kirby testified at a hearing before a City Personnel Appeals Committee concerning a grievance filed by fellow City police officer James Henning. The grievance challenged discipline imposed against Henning for damaging a patrol vehicle ("Car 127") by driving it with too little transmission fluid. At the hearing, Kirby recounted the maintenance history and transmission fluid capacity of Car 127, provided his opinion of Henning's maintenance and driving habits, and explained how transmission leaks are diagnosed. Kirby maintains that Hampton and Koch were angered by his testimony, which they perceived to undercut Hampton's position and support Henning's.

Following his testimony, Kirby left the police station at about 1:30 p.m. to begin a previously scheduled vacation. When Kirby returned to work, he learned that he had received an "oral reprimand" for "[f]ailure to support the Department's Administration." J.A. 44. Kirby claims that he was reprimanded because his hearing testimony conflicted with Hampton's. However, Appellees insist that the reprimand was based not on the substance of Kirby's testimony but on Kirby's failure to follow proper procedures before testifying. Specifically, Appellees assert that an employee scheduled to be on duty when he will be testifying is required to provide advance notice to the City's Human Resources Department so that another officer may be assigned to cover the employee's duties. Kirby denies that he had any

duty to notify Human Resources. On this basis, he filed a grievance challenging the punishment.[1] He also initiated the present action on August 31, 2001, alleging that the reprimand was in retaliation for his testimony.

On September 4, 2001, Kirby received notice that Hampton had demoted him from Sergeant to Police Officer III. Appellees claim that the demotion was because of Kirby's poor job performance and that an audit of cases assigned to Kirby's Investigative Bureau over the first six months of 2001 showed that in 61 of the 377 cases, the investigation did not comply with applicable policies and procedures. In particular, several case files did not contain supplements updating progress in the investigations even though such supplements were required to be completed weekly. Kirby contends that the supplement policy had not previously been enforced and that supplements in some of the identified cases were not required by the policy or could not be completed. Kirby thus amended his complaint in the present action on September 21, 2001, to add claims related to his demotion.

As amended, Kirby's complaint alleges that Appellees' retaliation based on his testimony violated his constitutional rights to free expression and association, as well as his right to freedom from the imposition of unconstitutional conditions on his public employment.[2] The complaint further asserts that the retaliation violated his Fourteenth Amendment liberty interest in testifying truthfully and denied him equal protection under the law. It also alleges that the reprimand violated Kirby's equal protection rights because it constituted disparate treatment with no rational basis. Finally, the complaint alleges that Kirby's demotion in retaliation for his filing the grievance and initial complaint violated his freedom to petition for redress of grievances.

---

[1]Kirby also challenged another reprimand he received when he returned from vacation. However, he withdrew that challenge after filing the present action.

[2]Kirby contends that "[Appellees'] conduct has implicitly commanded that [Kirby] not testify truthfully, which is an unconstitutional condition of employment." J.A. 40.

After hearing Kirby's grievance of his demotion, the City's Personnel Appeals Committee ("PAC") concluded that Kirby had indeed violated department policy, but it recommended that Kirby's sanction be reduced. Specifically, the PAC recommended that Kirby retain his rank of Sergeant for a one-year probationary term and that his hourly salary be set at $15.90 per hour—a rate lower than his pay prior to the demotion but higher than he had received since. Following his review of the PAC's findings and recommendations, the City Manager accepted the finding that Kirby had violated departmental policy but decided that Kirby would remain at the lower rank of Police Officer III for a six-month probationary period at the rate of pay that the PAC recommended.[3] Kirby was reinstated to his former Sergeant position at the expiration of the probationary period. He nevertheless maintains that Appellees have continued their retaliation against him by assigning him to perform secretarial duties such as handling telephone inquiries.

Appellees moved for summary judgment, and Kirby filed a cross-motion for partial summary judgment. The district court granted Appellees' motion and denied Kirby's. Regarding Kirby's freedom of expression claim, the court ruled that testimony in a public hearing is not constitutionally protected unless the testimony relates to a matter of public concern. The court ruled that the speech at issue here was not protected because it concerned only one particular employee in a matter that was not of general concern to the public. The court ruled that Kirby's claims alleging violation of his freedom to associate and asserting the imposition of unconstitutional conditions on his public employment also failed because the claims alleged retaliation for matters not of public concern. The district court also rejected Kirby's Fourteenth Amendment liberty claim on the ground that it was simply a rewording of his freedom of expression claim and that any residual liberty protection given to free speech under the Fourteenth Amendment could not exceed the protection that the First Amendment affords.

The district court divided Kirby's equal protection claims into two categories—those claims alleging that he was treated differently in

---

[3]The City Manager also determined that the $15.90 pay rate would be retroactive to the date of Kirby's demotion.

retaliation for his testimony and his claim that there was no rational basis for the treatment he received. The court disposed of the first group on the basis that generic free-speech retaliation does not constitute an equal protection violation. And, the rational basis claim was disposed of on the ground that Kirby failed to forecast evidence negating the existence of any facts from which a conceivable rational basis justifying the treatment he received could be derived.

Finally, the district court ruled that Kirby's petition claim failed because his grievance and lawsuit did not involve matters of public concern and thus were not constitutionally protected.

## II.

Kirby first contends that the district court erred in granting summary judgment on his freedom of expression claim. Specifically, he maintains that his testimony was on a matter of public concern because (1) it was given in a public hearing, and (2) it concerned matters of the type that would interest the general public. We conclude that the district court properly granted summary judgment against Kirby on this claim.

It is well settled that citizens do not relinquish all of their First Amendment rights by virtue of accepting public employment. *See United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 465 (1995); *Connick v. Myers*, 461 U.S. 138, 142 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Nevertheless, the government, as an employer, clearly possesses greater authority to restrict the speech of its employees than it has as sovereign to restrict the speech of the citizenry. *See Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2000) (en banc). A determination of whether a restriction imposed on a public employee's speech violates the First Amendment requires "'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Connick*, 461 U.S. at 142 (alteration in original) (quoting *Pickering*, 391 U.S. at 568). This balancing begins with an inquiry into whether the speech at issue was that of a private citizen speaking on a matter of public concern. *See Mansoor v. Trank*, 319 F.3d 133, 137 (4th Cir. 2003). If so, the court

must next consider whether the employee's interest in his First Amendment expression outweighs the employer's interest in what it has determined to be the appropriate operation of the workplace. *See Urofsky*, 216 F.3d at 406.

To determine whether speech involves a matter of public concern, we examine the content, form, and context of the speech at issue in light of the entire record. *See Connick*, 461 U.S. at 147-48. Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community. *See id.* at 146. The public-concern inquiry centers on whether "the public or the community is likely to be truly concerned with or interested in the particular expression." *Arvinger v. Mayor of Baltimore*, 862 F.2d 75, 79 (4th Cir. 1988) (internal quotation marks omitted). Whether speech addresses a matter of public concern is a question of law for the court, and thus we review the matter de novo. *See Urofsky*, 216 F.3d at 406.

We now turn to Kirby's arguments. Kirby's first contention—that the fact that his testimony was given in a public hearing makes it a matter of public concern—is at odds with our opinion in *Arvinger*. There we determined that a police officer did not address a matter of public concern when he stated during a coworker's employment hearing that he did not know whether marijuana found in his van belonged to the coworker. *See Arvinger*, 862 F.2d at 78-79. In so doing, we held that it was "irrelevant for first amendment purposes that the statement was made in the course of an official hearing" because the statement was made not to further any public debate, but only to further the interests of the two officers involved. *Id.* at 79.

Kirby argues that *Arvinger* is distinguishable from the present case because in *Arvinger* the testimony was not truthful. However, nothing in our decision indicates that the outcome depended on the alleged falsity of the testimony. Kirby also argues that even if his position is at odds with *Arvinger*, that decision is not controlling because it conflicts with Judge Ervin's separate opinion in *Whalen v. Roanoke County Bd. of Supervisors*, 769 F.2d 221 (4th Cir. 1985), which this court subsequently adopted, *see Whalen v. Roanoke County Bd. of Supervisors*, 797 F.2d 170 (4th Cir. 1986) (en banc) (per curiam). In fact, *Arvinger* and the en banc *Whalen* decision are completely consistent because nothing in Judge Ervin's opinion states that testimony

in a public hearing necessarily relates to a matter of public concern. In *Whalen*, the panel concluded that the plaintiff's testimony at a public hearing concerned a matter of public interest, *see Whalen*, 769 F.2d at 225, and Judge Ervin accepted this conclusion in his dissent, *see id.* at 226 (Ervin, J., concurring in part & dissenting in part). However, nothing in Judge Ervin's opinion or the panel majority opinion indicates that the existence of the hearing, rather than the subject matter of the statement, was what made the statement there a matter of public concern.

Kirby's second contention—that his speech involved a matter of public concern because it was on a topic of interest to the public—fails as well. Kirby's speech concerned the narrow question of whether Officer Henning negligently failed to monitor the transmission fluid in Car 127, thereby damaging the vehicle. Kirby did testify that a faulty transmission in Car 127 had once prevented an officer from responding to a call and that Car 127 had experienced other mechanical problems, but the relative unreliability of a single police vehicle simply is not of sufficient significance to attract the public's interest. *Cf. Arvinger*, 862 F.2d at 78-79 (holding that police officer did not address a matter of public concern when he stated that he did not know whether marijuana found in his van belonged to a coworker). And Kirby clearly was not interested in furthering any public debate about the reliability of Car 127. We therefore agree with the district court that Kirby's statements did not address a matter of public concern.[4]

---

[4]Because Kirby's speech was not constitutionally protected, Kirby's claim that the treatment he received amounted to an implicit restriction on his speech—and thus an unconstitutional condition on his public employment—fails as well. The same is true for his freedom of association claim, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 249 (4th Cir. 1999) (noting the correlative nature of freedom of association in relation to other First Amendment freedoms, including freedom of speech, and recognizing the relatedness of the limitations on both rights in a public employment context), and his Fourteenth Amendment liberty claim, *see Kelley v. Johnson*, 425 U.S. 238, 245 (1976) (holding that any residual Fourteenth Amendment liberty interest a person has in his speech is necessarily narrower than his First Amendment interest in that same speech).

III.

Kirby next argues that the district court erred in granting summary judgment against him on his equal protection claims. We disagree.

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The claims based on the allegation that Kirby was treated differently in retaliation for his speech are, at their core, free-speech retaliation claims that do "not implicate the Equal Protection Clause." *Edwards*, 178 F.3d at 250 (internal quotation marks omitted).

As for the claims based not on Appellees' actual motivation for their alleged disparate treatment of Kirby, but rather on the allegation that there was no rational basis for any difference in treatment, they fail as well. To establish such a claim, it is not sufficient for a plaintiff simply to show that the defendants' *actual* motive for their disparate treatment was irrational; rather he must negate "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Bd. of Trustees v. Garrett*, 531 U.S. 356, 367 (2001) (internal quotation marks omitted); *cf. Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000) (per curiam) (noting that claim of no rational basis is distinct from claim based on defendant's subjective motivation). Kirby does not challenge the determination of the district court that he cannot meet that standard. Instead, he argues that the "no *conceivable* rational basis" standard does not apply and that it is Appellees' *actual* motivation—retaliation for Kirby's testimony—that matters. But we have already explained that Kirby's equal protection claims fail to the extent that they are based on the allegation that he was retaliated against because of his testimony.[5]

---

[5]Kirby also contends that the district court erred in restricting discovery on the question of whether he actually was retaliated against. We conclude that the discovery restrictions were well within the discretion of the district court. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 235-36 (4th Cir. 2004) (stating standard of review).

IV.

Kirby finally maintains that the district court erred in granting summary judgment against him on his freedom to petition claim, which is based on his allegation that his demotion constituted retaliation for his formal challenges to the reprimand. Kirby contends that the district court erred in ruling that a public employee's petition must address a matter of public concern in order to be constitutionally protected. He alternatively maintains that his petitions did involve a matter of public concern. We reject the first argument but agree with the second.

A.

The First Amendment protects the right "to petition the Government for a redress of grievances." U.S. Const. amend. I. The Supreme Court has recognized that this right "is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). In rejecting the assertion that the Petition Clause provides absolute immunity for allegedly libelous statements included in letters to the President, the Court stated:

> The Petition Clause . . . was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble. These First Amendment rights are inseparable, and there is no sound basis for granting greater constitutional protection to statements made in a petition . . . than other First Amendment expressions.

*Id.* at 485 (citations omitted). We confirmed this principle in *Thorne v. Bailey*, 846 F.2d 241 (4th Cir. 1988), recognizing that the Petition Clause does not "enjoy[ ] a preferred place among First Amendment freedoms." *Thorne*, 846 F.2d at 244 (internal quotation marks omitted).

It would violate the principles articulated in *McDonald* and *Thorne* to extend constitutional protection of public employees' petitions for redress beyond the protections afforded to public employee speech. In

fact, it would allow the anomalous result that a private employment dispute could "be constitutionalized merely by filing a legal action." *Altman v. Hurst*, 734 F.2d 1240, 1244 n.10 (7th Cir. 1984) (per curiam). We therefore join the majority of circuits to have addressed the question in holding that a public employee's petition, like his speech, is constitutionally protected only when it addresses a matter of public concern. *See Jones v. Union County*, 296 F.3d 417, 426 (6th Cir. 2002); *Martin v. City of Del City*, 179 F.3d 882, 887-89 (10th Cir. 1999); *Grigley v. City of Atlanta*, 136 F.3d 752, 755-56 (11th Cir. 1998); *Rendish v. City of Tacoma*, 123 F.3d 1216, 1220-23 (9th Cir. 1997); *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir. 1993); *Hoffman v. Mayor of Liberty*, 905 F.2d 229, 233 (8th Cir. 1990); *Belk v. Town of Minocqua*, 858 F.2d 1258, 1261-62 (7th Cir. 1988); *Day v. S. Park Indep. Sch. Dist.*, 768 F.2d 696, 701-03 (5th Cir. 1985). *But see San Filippo v. Bongiovanni*, 30 F.3d 424, 439-43 (3d Cir. 1994) (holding that a "non-sham" grievance or lawsuit by a public employee that constitutes a "petition" is constitutionally protected even if it does not raise a matter of public concern).

### B.

In light of our holding, we turn to the question of whether Kirby's petitions—his grievance and his original complaint alleging that he was orally reprimanded because of his truthful testimony—involved a matter of public concern. We note initially that this case presents the uncommon allegation of second-level retaliation—that is, retaliation for challenging an earlier alleged retaliatory act. In light of the close and somewhat confusing relationship between the retaliation claims of different levels, it is important for us to begin by contrasting our analysis of this second-level retaliation claim based on the demotion —the petition claim—with our analysis of Kirby's first-level retaliation claims based on the reprimand. Because Kirby's first-level retaliation claims allege that he was reprimanded because of his *testimony*, the threshold question in analyzing the viability of those claims is whether Kirby's *testimony* involved a matter of public concern, which we hold it did not for the reasons already explained. Kirby's petition claim, however, alleges that he was demoted for *filing a grievance and a lawsuit*. Thus, the threshold question with regard to that claim

is whether *the grievance and the lawsuit* addressed a matter of public concern.[6]

This distinction is critical because while Kirby's *testimony* concerned only whether his fellow officer properly maintained his vehicle, his *grievance and lawsuit* concerned a subject of much greater interest to the public, namely whether the police chief and his lieutenant retaliated against Kirby for providing truthful testimony. Our research has not uncovered any case considering whether a petition alleging first-level retaliation amounts to constitutionally protected expression—and thus whether a claim for second-level retaliation is viable—when the speech that precipitated the first-level retaliation did not itself involve a matter of public concern. However, in this instance at least, we conclude that Kirby has cleared the threshold hurdle of demonstrating that his petitions alleging first-level retaliation involved a matter of public concern.

The critical factor supporting our conclusion is not that Kirby was allegedly unjustly reprimanded, but rather, that the reprimand could have a chilling effect on him and other officers. Retaliation by the police chief and his lieutenant against an officer based on the officer's allegedly truthful testimony in an official hearing most certainly could be expected to discourage officers in future inquiries from providing information that they suspect will displease the police chief. *See* J.A. 281 (affidavit of former City police chief explaining that "[r]eprimands of employees as a result of truthful testimony at grievance hearings will likely adversely affect the testimony of employees in . . . other hearings because the possibility of discipline will constitute a form of implied pressure upon employees"); *id.* at 274 (affidavit of City police officer stating that the "adverse action against . . . Kirby resonated throughout the police department with an extreme deterrent and damaging effect"). Considering that "uninhibited testimony is vital to the success of [the] truth-seeking function," *Catletti v. Rampe*, 334 F.3d 225, 230 (2d Cir. 2003), there is a strong public interest in ensuring that that process is not compromised. *Cf. Green v. Philadelphia Hous. Auth.*, 105 F.3d 882, 887 (3d Cir. 1997) ("The utility of uninhibited testimony and the integrity of the judicial process would

---

[6]Although we ordinarily consider context and form as well as content, the context and form of the petitions add little to our analysis here.

be damaged if we were to permit unchecked retaliation for appearance and truthful testimony at such proceedings."). This is particularly true in the law enforcement arena. *See Brawner v. City of Richardson*, 855 F.2d 187, 191-92 (5th Cir. 1988) ("The disclosure of misbehavior by public officials is a matter of public interest and therefore deserves constitutional protection, especially when it concerns the operation of a police department." (footnote omitted)).

It could be argued that because Kirby's testimony did not involve a matter of public concern, his allegation of retaliation based on that testimony is not sufficiently significant to involve a matter of public concern. Although we recognize that this issue is a close one, we conclude that the allegedly unwarranted reprimand could have a significant chilling effect on testimony relating to matters of public as well as private concern. One who believes that the police chief and his lieutenant are willing to punish adverse testimony and lie about the reason for it[7] is likely also to suspect that those officials would engage in retaliation even when such retaliation might be unconstitutional. For these reasons, we conclude that Kirby's allegation in his grievance and first complaint that he was reprimanded based on his testimony at a disciplinary hearing implicates a matter of public concern even though the testimony itself related to a private matter.[8]

---

[7]We emphasize that these are the allegations in Kirby's petitions, which we accept only for purposes of summary judgment.

[8]Although Appellees contend that a simple "oral reprimand" would not be sufficient to chill future speech, the record indicates that the so-called "oral" reprimand was in fact reduced to writing. J.A. 44. And, in any event, it is well established that even minor retaliation can have a chilling effect on future expression. *See Rutan v. Republican Party*, 497 U.S. 62, 76 n.8 (1990) ("[T]he First Amendment . . . protects state employees . . . from even an act of retaliation as trivial as failing to hold a birthday party for a public employee when intended to punish her for exercising her free speech rights." (alteration & internal quotation marks omitted)); *Smith v. Fruin*, 28 F.3d 646, 649 n.3 (7th Cir. 1994) (explaining that "minor forms of retaliation . . . may have just as much of a chilling effect on speech as more drastic measures").

We also note that Appellees do not maintain that retaliating against Kirby for filing his petitions advanced its interest in what it has determined to be the appropriate operation of the workplace. *See Urofsky*, 216 F.3d at 406.

C.

Although we hold that Kirby's petitions implicated a matter of public concern, we affirm the judgment in favor of Appellees on other grounds.

First, Chief Hampton and Lieutenant Koch are entitled to qualified immunity. Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Here, the petition rights that Kirby alleges that Chief Hampton and Lieutenant Koch violated were anything but clear. As is apparent from our analysis of the petition claim, the legal viability of the claim presents a close and novel issue, and even assuming that Kirby's allegations are true, Hampton and Koch cannot be held liable for what would amount to "bad guesses in [a] gray area[ ]." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

While the City is not entitled to assert a qualified immunity defense, it is also not liable under *respondeat superior* principles simply by virtue of its employment of Hampton and Koch. Rather, to establish liability on behalf of a municipality, a plaintiff must show that the officers acted pursuant to an official policy or custom of the municipality. *See Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). Such a policy or custom need not derive from municipal ordinances; "it may also be found in formal or informal *ad hoc* 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy." *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987).

Kirby asserts several different theories under which he contends the City could be liable for retaliating against him, none of which withstands scrutiny. First, Kirby contends that Chief Hampton's decision to demote him was itself a policy decision for which the City could be liable. However, Chief Hampton lacked final authority with regard to that decision because the demotion was subject to further review by the City's Personnel Appeals Committee and City Manager. *See Riddick v. Sch. Bd.*, 238 F.3d 518, 523 (4th Cir. 2000)

("When a municipal official's discretionary action is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies." (internal quotation marks omitted)). Kirby also maintains that the City ratified and acquiesced in Chief Hampton's unconstitutional retaliation against Kirby to the extent that the demotion was affirmed during the grievance process. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."). That theory fails as well though because Kirby has not forecasted evidence that the City Manager approved of retaliation against Kirby as a basis for the demotion. *Cf. Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 196 (4th Cir. 1994) (affirming determination by the district court that school board ratified unconstitutional termination of teacher when board was aware of the retaliatory reasons for her firing). Kirby finally argues that even if the demotion itself did not constitute a policy decision for which the City could be held liable, the demotion was proximately caused by policies contained in the City Police Department's "Policy and Procedures Manual" that restricted certain types of speech.[9] J.A. 206. However, even if the City could otherwise be held liable under this theory, Kirby has not forecasted evidence that the existence of these policies played any causal role regarding his demotion, which Appellees have consistently defended solely on the basis that it was an appropriate response to Kirby's failure to satisfactorily complete his duties. *See Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (stating that plaintiff is required to show "a close fit between the unconstitutional policy and the constitutional violation").[10]

---

[9]Under those policies, officers may not discuss "Department problems . . . outside of [the] Department" or make "[d]erogatory remarks about . . . the Chief." J.A. 210.

[10]Kirby maintains that the officers' qualified immunity and the lack of municipal liability would not preclude an award of equitable relief—such as back pay, front pay, an injunction against his performing secretarial duties, or expungement of his employment records—or of declaratory relief. He is incorrect. Qualified immunity prevents an award of back or front pay against the officers in their individual capacities. *See Paxman v. Campbell*, 612 F.2d 848, 855-56 (4th Cir. 1980) (en banc); *Los Ange-*

V.

In sum, we affirm the district court order granting summary judgment to Appellees.

*AFFIRMED*

---

*les Police Protective League v. Gates*, 995 F.2d 1469, 1472 n.1 (9th Cir. 1993). The other injunctive relief Kirby seeks could only be awarded against the officers in their official capacities, *see Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993); *Scott v. Flowers*, 910 F.2d 201, 213 & n.25 (5th Cir. 1990), but we have held that the City is not liable, *see Hensley v. Horne*, 297 F.3d 344, 347 n.1 (4th Cir. 2002); *see also Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982) ("Official capacity suits generally represent but another way of pleading an action against the entity of which the officer is an agent . . . ."). All that remains then is Kirby's request for a declaration that his rights have been violated. However, absent any expected practical effect of requested declaratory relief —and none is apparent here—a claim for such relief is not sufficient to create a case or controversy for Article III purposes. *See S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc.*, 24 F.3d 427, 431 (2d Cir. 1994).