**J.R. LILIENTHAL, Plaintiff,**

v.

**CITY OF SUFFOLK, and Mark R. Outlaw, named in his individual and official capacities, Defendants.**

**No. 203CV229.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 4, 2003.

---

Henry E. Howell, III, Virginia Beach, VA, Thomas A. Woodley, Woodley & McGillivary, Washington, DC, for Plaintiff.

Robert W. McFarland, Stacy M. Landis, McGuireWoods, LLP, Norfolk, VA, for Defendants.

## MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

Plaintiff, J.R. Lilienthal, brings this action against defendants, City of Suffolk and Mark R. Outlaw, alleging violations of his constitutional rights, pursuant to 42 U.S.C. § 1983. This matter is currently before the court on defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), and plaintiff's motion for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56.

## I. FACTUAL AND PROCEDURAL HISTORY

Since 1995, plaintiff has been employed with the fire department of the City of Suffolk ("defendant City"), where Mark R. Outlaw ("defendant Outlaw") is the Fire Chief. Plaintiff is currently a lieutenant in the fire department. In addition, plaintiff has been the President of the Suffolk Professional Fire and Rescue Association (the "Association") since 1998.

On several occasions prior to September 24, 2002, plaintiff spoke to the City Council and employees of the City Manager's Office on various topics concerning the fire department. Plaintiff also associated with members of the City Council, City Manager's Office, and individual City department directors in the course of addressing fire department matters.

On September 25, 2002, defendant Outlaw requested a meeting with plaintiff. During that meeting, defendant Outlaw handed to plaintiff a memorandum regarding his previous communications with City officials on fire department issues. The memorandum addressed to plaintiff from defendant Outlaw stated as follows:

> On numerous occasions, you have contacted City Council members, the City Manager's Office and other department directors via telephone, e-mail or other-
> wise to discuss fire department business, management issues, and schedule official meetings without authorization. As this conduct is outside the realm of your duties and responsibilities, effective immediately, these actions will cease.
> All communications of this nature shall be presented to my office for review and, if further discussions or meetings are deemed necessary, I will contact the appropriate manager or director.
> As I appreciate your concerns and willingness to offer suggestions, I will not tolerate this circumventing of our established command system from any subordinate or employee. Should this behavior continue, disciplinary action will be forthcoming.
> Thank you for your cooperation.

Compl. ¶ 8. A copy of this memorandum was also sent to Cindy Rolhf, the Assistant City Manager. Since receiving the memorandum from defendant Outlaw, plaintiff has not addressed any substantive fire department matters with the City Council, members of the City Manager's Office, or other department directors.

On October 28, 2002, plaintiff sent a letter to defendant Outlaw notifying him that the September 24 memorandum violated his First Amendment rights, and he requested that the policy prohibiting him from speaking to the City and its employees be rescinded. On several other occasions, plaintiff requested that the policy be rescinded. On March 6, 2003, defendant City responded to plaintiff's requests by stating that the September 24 memorandum did not violate plaintiff's constitutional rights.

After receiving unfavorable responses to his multiple requests to rescind the policy outlined in the September 24 memorandum, plaintiff filed this lawsuit on March 25, 2003. On May 27, 2003, defendants filed a motion to dismiss plaintiff's com-

plaint for failure to state a claim upon which relief can be granted. On June 12, 2003, plaintiff responded to defendants' motion to dismiss and, simultaneously, filed a motion for partial summary judgment. Defendants replied to plaintiff's response to their motion to dismiss on June 17, 2003. Defendants responded to plaintiff's motion for partial summary judgment on June 25, 2003, and plaintiff filed a reply thereto on July 3, 2003. Because the issues have been extensively, and exhaustively, briefed by all the parties, the court has determined that a hearing is unnecessary. The matter is therefore ripe for judicial review.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

A motion to dismiss, pursuant to Rule 12(b)(6), should not be granted unless it appears certain that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Labram v. Havel,* 43 F.3d 918, 920 (4th Cir.1995). The standard governing Rule 12(b)(6) dismissal motions requires that a court reviewing such a motion accept the complaint's factual allegations as true and view the allegations in a light most favorable to the nonmoving party. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *GE Inv. Private Placement Partners II v. Parker,* 247 F.3d 543, 548 (4th Cir.2001).

■ Furthermore, when as here, a motion to dismiss tests the sufficiency of a civil rights complaint, the court "must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged."

*Harrison v. United States Postal Serv.,* 840 F.2d 1149, 1152 (4th Cir.1988).

### B. Motion for Summary Judgment

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Terry's Floor Fashions v. Burlington Indus.,* 763 F.2d 604, 610 (4th Cir.1985). Once a party has properly filed evidence supporting the summary judgment motion, the nonmoving party may not rest upon mere allegations in the pleadings, but must set forth specific facts illustrating genuine issues for trial. *See* Fed.R.Civ.P. 56(c); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. 2548. "The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). Furthermore, the existence of a scintilla of evidence in support of the nonmoving party's position is insufficient. Rather, the evidence must be such that the fact-finder reasonably could find for the nonmoving party. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## III. ANALYSIS

In his complaint, plaintiff states that prior to September 24, 2002, he frequently spoke out on matters of public concern related to fire department issues in the City of Suffolk. In response to his speaking out on such matters of public concern, plaintiff claims that defendants instituted a

policy, evidenced by the memorandum dated September 24, 2002, that prohibited him from speaking to members of the public without first getting approval from defendant Outlaw, under threat of disciplinary action.

Plaintiff's complaint alleges that the September 24 memorandum he received from defendant Outlaw violates his rights to free speech and free association under the First and Fourteenth Amendments. Defendants deny that they committed either of these violations and contend that, assuming they did violate plaintiff's constitutional rights, they are entitled to qualified immunity.

### A. Defendants' Motion to Dismiss

#### 1. Free Speech Claim

Defendants assert that plaintiff's complaint fails to state a claim upon which relief can be granted with respect to the claim that plaintiff's First Amendment right to free speech was violated. While a public employee does not have a constitutional right to his job, a public employer "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). It follows, therefore, that a public employer is prohibited from discharging or taking other adverse action against one of its employees on a basis that infringes the employee's constitutionally-protected interest in freedom of speech. *See Rankin v. McPherson*, 483 U.S. 378, 383–84, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). Furthermore, a public employer is prohibited from threatening to discharge a public employee in an effort to chill that employee's rights under the First Amendment. *See id.* at 384, 107 S.Ct. 2891; *Connick*, 461 U.S. at 144–45, 103 S.Ct. 1684.

■ However, in the public employment context, a public employer "may impose some restraints on job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." *United States v. National Treasury Employees Union (NTEU)*, 513 U.S. 454, 465, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995). This is because "as an employer, the government is entitled to maintain discipline and ensure harmony as necessary to the operation and mission of its agencies." *McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir.1998).

In order to determine whether a public employee, such as plaintiff, has a section 1983 cause of action for violation of his First Amendment right to free speech, the court must balance "the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). This test is known as the *Pickering* balancing test.

■ First, the court must determine whether, after accepting all of plaintiff's well-pleaded allegations in his complaint as true and drawing all reasonable factual inferences from those facts in his favor, plaintiff was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest. *See Arvinger v. Mayor and City Council*, 862 F.2d 75, 77 (4th Cir.1988). If the court determines that plaintiff was speaking as an employee about a matter of personal interest, rather than as a citizen on a matter of public concern, no First Amendment violation exists and the analysis stops. *See id.* If the court determines the opposite, however, the court asks whether, after accepting all of plaintiff's well-pleaded allegations in his complaint as true and drawing all reasonable factual inferences

in his favor, plaintiff's interest in speaking upon the matter of public concern outweighs the City's interest in providing effective and efficient services to the public. *See Stroman v. Colleton County Sch. Dist.,* 981 F.2d 152, 156 (4th Cir.1992).

■■■■ Whether speech involves a matter of public concern is a question of law to be determined by the court. *See Arvinger,* 862 F.2d at 77. Speech involves a matter of public concern if it affects the social, political, or general well-being of a community. *See Connick,* 461 U.S. at 146, 103 S.Ct. 1684. "Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment." *Stroman,* 981 F.2d at 156.

■■ The Fourth Circuit has explained that the answer to the public concern inquiry rests on "whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a private matter between employer and employee." *Berger v. Battaglia,* 779 F.2d 992, 999 (4th Cir.1985) (internal quotation marks omitted). In performing the public concern inquiry, the court must examine the content, context, and form of the employee's speech in light of the entire record. *See Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684.

At this early stage of the case, where the entire record consists only of plaintiff's complaint, the court concludes that the speech at issue may be a matter of public concern. After examining the content, context, and form of plaintiff's speech as alleged in his complaint, the court finds that fire department issues such as safety, equipment, staffing, and response time are subjects in which "the public or the community is likely to be truly concerned" and "interested." *Berger,* 779 F.2d at 999 (in-

ternal quotation marks omitted). The content is of obvious concern to both the citizens on whose behalf the fire department operates and the firefighters themselves. Furthermore, the context of plaintiff's speech, which at this stage of the pleadings consists of plaintiff's allegations that he spoke with members of the City Council and City Manager's Office, weighs in favor of concluding his speech is a matter of public concern. Having concluded that the speech at issue is, at this stage of the proceedings, entitled to protection against the challenged actions of defendants, the court now turns to consider whether defendants' actions may be justified under the *Pickering* balancing test.

■■ The court now must consider whether, after accepting all of plaintiff's well-pleaded allegations in his complaint as true and drawing all reasonable factual inferences from those facts in his favor, plaintiff's interest in speaking upon fire department issues such as safety, equipment, staffing, and response time outweighs the City's interest in providing effective and efficient services to the public. *See Stroman,* 981 F.2d at 156. In performing this balancing test, the Fourth Circuit has recognized that the court should first assess the value, from the First Amendment perspective, of the employee's speech. *See Berger,* 779 F.2d at 999 (holding that in performing the *Pickering* balancing test, the district court was proper in first assessing the value, from the First Amendment perspective, of the employee's speech). The court should then assess the time, place, and manner of the speech at issue, as well as the context in which the dispute arose. *See Rankin,* 483 U.S. at 388, 107 S.Ct. 2891.

■■■ Here, the speech at issue appears to deal with the operation of the fire department and its direct effect on the public. Speech on public issues occupies the

highest rung of the hierarchy of First Amendment values. *See Connick,* 461 U.S. at 145, 103 S.Ct. 1684 (stating that the Supreme "Court has frequently reaffirmed that speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection.") (quoting *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 913, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982), and *Carey v. Brown,* 447 U.S. 455, 467, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980)).

■ The court next assesses the time, place, and manner of the speech at issue, as well as the context in which the dispute arose. *See Rankin,* 483 U.S. at 388, 107 S.Ct. 2891. In this regard, relevant considerations are "whether the statement impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Id.*

Here, there are no examples of the type of speech in which plaintiff engaged, other than his allegations that he frequently spoke to members of City Council and the City Manager's Office. There are no facts indicating that plaintiff claimed to be speaking for or in any way on behalf of the department. There is also no indication at this early pleading stage that plaintiff's speech would impair discipline by superiors or harmony among co-workers, would have a detrimental impact on any close working relationships for which personal loyalty and confidence are necessary, or would impede the performance of plaintiff's duties or interfere with the regular operation of the fire department. Indeed, at this early pleading stage, the court cannot discern any legitimate interest of defendants in preventing a firefighter of the City from expressing his concerns about the operation of the fire department as it applies to public safety. Furthermore, because we are at the Rule 12(b)(6) stage of this litigation, the court must accept as true plaintiff's allegation that he was denied permission to speak with members of the City Council and City Manager's Office because "he had spoken out on, and become involved in, [ ] matters of public concern." Compl. ¶ 17. For these reasons, the court finds that, at this early pleading stage, the *Pickering* balancing test weighs in favor of plaintiff.

■ Plaintiff's complaint leaves no doubt that defendants' threat to terminate plaintiff, if he continued to communicate with members of City Council, the City Manager's Office, or department directors, was intended to chill his right to engage in what the court has just determined, for purposes of this motion to dismiss, is protected expression. Therefore, the threat is actionable, *see Rankin,* 483 U.S. at 384, 107 S.Ct. 2891; *Connick,* 461 U.S. at 144–45, 103 S.Ct. 1684, and plaintiff's complaint states a claim upon which relief may be granted. Accordingly, defendant's motion to dismiss is **DENIED** with respect to this claim.

### 2. Free Association Claim

Defendants also assert that plaintiff's complaint fails to state a claim upon which relief can be granted with respect to the claim that plaintiff's right to free association was violated. Plaintiff's freedom of association claim parallels his free speech claim. Indeed, the Fourth Circuit has recognized that "the right to associate in order to express one's views is 'inseparable' from the right to speak freely." *Cromer v. Brown,* 88 F.3d 1315, 1331 (4th Cir.1996) (quoting *Thomas v. Collins,* 323 U.S. 516, 530, 65 S.Ct. 315, 89 L.Ed. 430 (1945)). As the Supreme Court explained in *Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984):

An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed.... Consequently, we have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

*Id.* at 622, 468 U.S. 609; *see also NAACP v. Alabama, ex rel. Patterson,* 357 U.S. 449, 460–61, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

■ As in the freedom of speech context, a public employee's corresponding right to freedom of association is not absolute. Logically, the limitations on a public employee's right to associate are "closely analogous" to the limitations on his right to speak. *Wilton v. Mayor & City Council,* 772 F.2d 88, 91 (4th Cir.1985).

■ In his complaint, plaintiff alleges that, in the course of speaking about fire department issues, he associated with members of the City Council, the City Manager's Office, and other members of the fire department. He further alleges that the defendants instituted the policy outlined in the September 24 memorandum because of these associations. Compl. ¶ 24. Obviously, as in the free speech context, these are not governmental interests sufficient to outweigh plaintiff's interest in associating for the purpose of personal expression on a matter of public concern. Accordingly, the court finds that plaintiff's complaint states a freedom of association claim upon which relief may be granted. Therefore, defendant's motion to dismiss is **DENIED** with respect to this claim.

## B. Plaintiff's Motion for Partial Summary Judgment

While the court finds, at this early stage of the pleadings, that plaintiff's complaint states a claim upon which relief may be granted, it is clear that there exist genuine issues of material fact upon which reasonable minds can differ. Therefore, plaintiff is not entitled to judgment as a matter of law. Accordingly, plaintiff's motion for partial summary judgment is **DENIED**.

## IV. QUALIFIED IMMUNITY

■ Defendant Outlaw has raised the issue of qualified immunity. Qualified immunity protects government officials from civil damages in a section 1983 action "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see Pinder v. Johnson,* 54 F.3d 1169, 1173 (4th Cir.1995) (en banc). In analyzing the applicability of a qualified immunity defense, the court must first identify the specific right that the plaintiff asserts was infringed by the challenged conduct at a high level of particularity. *See Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Taylor v. Waters,* 81 F.3d 429, 433 (4th Cir.1996). The court must then consider whether, at the time of the claimed violation, that right was clearly established. *See id.*

■ For a right to have been clearly established, "the 'contours of the right' must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." *Swanson v. Powers,* 937 F.2d 965, 969 (4th Cir.1991) (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034). In determining whether a right was clearly established at the time of the claimed violation, "courts in this circuit

[ordinarily] need not look beyond the decisions of the Supreme Court, the court of appeals, and the highest court of the state in which the case arose ...." *Jean v. Collins,* 155 F.3d 701, 709 (4th Cir.1998) (en banc). Notably, however, the nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent the denial of qualified immunity. *See id.* at 708. In analyzing the applicability of the qualified immunity defense, the court lastly considers whether a reasonable person in the official's position would have known that his conduct would violate that right. *See Anderson,* 483 U.S. at 639, 107 S.Ct. 3034; *Taylor,* 81 F.3d at 433.

 Stated at the appropriate level of particularity, the first right allegedly violated by defendant Outlaw is the right of a firefighter to express his personal views on a matter of public concern without being threatened with termination motivated by the fire chief's opposition to the expression of such views. The court need not look further than the Fourth Circuit's decision in *Berger v. Battaglia,* 779 F.2d 992, 999 (4th Cir.1985), in order to determine whether the right at issue was clearly established. In *Berger,* the Fourth Circuit held the First Amendment prevented the Baltimore Police Department from conditioning the continued employment of one of its officers upon his cessation of off-duty public entertainment performances based upon the police department's perceived threat of disruption to its external operations and relationships by threatened reaction to the officer's artistic expression by offended members of the public. *See id.* at 1001. Given that in 1985 it was clearly established in this circuit that a police department's perceived threat of disruption is insufficient to justify conditioning a police officer's continued employment upon the cessation of his off-duty protected expression, this court concludes that, in September 2002, it was clearly established that a fire chief's disagreement with a firefighter's views on fire department safety issues and the firefighter's manner of expressing those views is insufficient to justify conditioning continued employment upon the cessation of the protected expression based on a perceived threat of disruption. The court also concludes that a reasonable person in defendant Outlaw's position would have known that his conduct would violate that right. Accordingly, qualified immunity on plaintiff's section 1983 free speech claim under the First Amendment is inappropriate at this early pleading stage of the litigation.

 The court now turns to plaintiff's freedom of association claim. Stated at the appropriate level of inquiry, the right alleged is that of a firefighter to associate with other persons in order to express his views on matters of public concern without being threatened with termination motivated by the fire chief's opposition to the manner of expression. The court concluded above that this right in the free speech context was clearly established in September 2002. Based on the Supreme Court's decision in *Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), implicit in the right to engage in activities protected by the First Amendment is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id.* at 622, 104 S.Ct. 3244. Accordingly, logic dictates that the right of a firefighter to associate with other persons in order to express his personal views on a matter of public concern without being threatened with termination motivated by the fire chief's opposition to the expression of those views was clearly established in September 2002. Again, the court concludes that a reasonable person in defendant Outlaw's position would have known that his conduct would violate that right.

Therefore, qualified immunity on plaintiff's section 1983 freedom of association claim under the First Amendment is also inappropriate at this early pleading stage of the litigation.

## V. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is **DENIED**. Plaintiff's motion for partial summary judgement is also **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to all counsel of record.

IT IS SO **ORDERED**.